## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No. 1:21-cr-39** |
| AUSTIN JOHN DUDENHOEFER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

Pending before the Court in this criminal action are various motions seeking to compel the Government's disclosure of certain information to defense counsel. This memorandum opinion addresses the Motion for Disclosure of Defendant's Statements, ECF No. 681, filed by Defendant Austin John Dudenhoefer ("Defendant" or "Dudenhoefer").[1] For the reasons that follow, Defendant's motion will be granted in limited part and otherwise denied.

## I.   BACKGROUND

Dudenhoefer is a licensed physical therapist formerly employed by Hertel & Brown Physical and Aquatic Therapy ("H&B"). On February 23, 2021, agents from the Federal Bureau of Investigations ("FBI") and Health and Human Services ("HHS") executed a search warrant at the Summit Office of H&B in Erie, Pennsylvania, where Dudenhoefer then worked. Agents on site inquired whether Dudenhoefer would be willing to speak with them. According to Dudenhoefer, the agents did not advise whether he was a subject or target of their investigation, did not inform him he was free to leave, and did not notify him of his Constitutional rights to

---

[1] To the extent Defendant Dudenhoefer has joined in the motions of other Defendants, the Court either has addressed or will address those matters in a separate ruling.

1

remain silent and to have counsel present.  Dudenhoefer nevertheless agreed to speak with the agents and claims that he was questioned for several hours.

Subsequently, on May 25, 2021, Dudenhoefer spoke with agents from the Pennsylvania Department of State's Bureau of Enforcement & Investigation ("BEI"), the enforcement arm of Pennsylvania's professional licensing boards.  According to Dudenhoefer, the BEI agents informed him that there had been a complaint relating to him, but they did not tell him what the nature of the complaint was, who made it, or when.  Dudenhoefer agreed to speak with these agents and states that he was interviewed for more than an hour.

In November of 2021, a grand jury returned an indictment against H&B and twenty individuals affiliated with H&B, including Dudenhoefer.  The indictment charged all Defendants with health care fraud and conspiracy to commit wire and health care fraud.  ECF No. 1.  On May 10, 2022, a superseding indictment was returned, charging the same Defendants with the same crimes, but with some amended averments.  ECF No. 425.

Meanwhile, following this Court's entry of a protective order in January 2022, the Government began its production of discovery materials, which has occurred on a rolling basis. Pertinent to the instant dispute, the Government provided Dudenhoefer the reports of his two interviews.  Regarding the February 23, 2021 interview, the Government produced a Report of Interview prepared on March 1, 2021 by Agent Vladimir Posteva of the United States Department of Health and Human Services, Office of Inspector General, Office of Investigations.  Regarding the May 25, 2021 interview, the Government produced a memorandum report prepared by BEI Professional Conduct Investigator 1 Richard Jones, dated October 1, 2021.

Upon defense counsel's request, the prosecution turned over the rough notes taken during Dudenhoefer's February 23, 2021 interview by federal agents. The Government represents that

the rough notes from the May 25, 2021 interview no longer exist because, pursuant to BEI policy, the agent notes were destroyed upon completion of the interview report.

On December 5, 2022, Assistant United States Attorney Christian Trabold transmitted a letter to Dudenhoefer's counsel setting forth the contents of certain statements attributed to Dudenhoefer based on his interviews, which the Government intends to introduce at trial.

Dudenhoefer does not concede that the HHS and BEI reports are complete and accurate summaries of what he said.  Among other things, he reportedly does not recall making some of the statements attributed to him and believes he made certain other statements to the agents which were not included in the reports.

Dudenhoefer also disputes the descriptions and characterization of his alleged statements as set forth in AUSA Trabold's December 5, 2022 letter.  He asserts that the letter omits "substantial" information that he believes is "essential" for providing "clarity, color, context, and explanation" concerning the HHS and BEI reports.  ECF No. 681 at 3.

"In order to accomplish the purpose of Fed. R. Crim. P. 16 and ensure [his] 5th and 6th Amendment rights," Dudenhoefer has filed a motion seeking "other records which contain [his] statements or statements attributed to him."  ECF No. 681 at 3.  To that end, he requests the disclosure of:

1.  any rough drafts of reports, memoranda or other writings relating to them which have not been produced created by an agent of the United States or of the Commonwealth of Pennsylvania;

2.  any communications (e.g. correspondence, letters, facsimiles, notes, e-mail, text messages, and voice-mails) created by an agent of the United States or of the Commonwealth of Pennsylvania;

3.  Any grand jury testimony relating, referring to, or reflecting statements attributed to Mr. Dudenhoefer;

4.  Any briefings or presentations (including, Microsoft® PowerPoint® or similar presentation tools), lists of questions, lists or outlines of subjects of inquiry, or scripts, provided to any

3

agents of the United States or of the Commonwealth of Pennsylvania who were tasked with interviewing Austin Dudenhoefer;

5. Any notes or other writings (whether handwritten or electronic) created by agents of the United States or of the Commonwealth of Pennsylvania from any of the materials described in the preceding paragraph.

ECF No. 681.

In its response, the Government represents that it has provided all material in its possession relating to Dudenhoefer's two statements to investigators, including the available rough notes.  Thus, the prosecution believes it has no further disclosure obligations. As for its December 5, 2022 letter to defense counsel, the Government asserts that it was simply providing notice of its intent to enter certain of Dudenhoefer's alleged statements into evidence at trial. The Government states that it has no intention of offering into evidence those portions of Dudenhoefer's statements that it considers to be "falsely self-serving," ECF No. 721 at 2, nor does the prosecution believe that such hearsay statements are admissible under the Federal Rules of Evidence.

## II.     DISCUSSION

The United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16, "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." *United States v. Ramos*, 27 F.3d 65, 67-68 (3d Cir. 1994).  As a general matter these other areas are limited to the Jencks Act and materials available pursuant to the "*Brady* doctrine."  *Id*. at 68; *see Brady v. Maryland*, 383 U.S. 83, 87 (1963) (requiring the disclosure of evidence favorable to an accused which is material either to guilt or to punishment); *Giglio v. United States*, 405 U.S. 150, 154 (1972) (extending *Brady*'s disclosure requirements to evidence affecting the credibility of a witness whose reliability "may well be determinative of guilt or

innocence"); *see also* 18 U.S.C. §3500 (pertaining to demands for production of statements and reports of witnesses).

Relevant to the instant motion is Rule 16(a)(1)(A) and (B), which govern the production of a defendant's statements. The Rule provides for the following disclosures:

> **(A) Defendant's Oral Statement**. Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.

> **(B) Defendant's Written or Recorded Statement**. Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:

> > **(i)** any relevant written or recorded statement by the defendant if:

> > > • the statement is within the government's possession, custody, or control; and

> > > • the attorney for the government knows--or through due diligence could know--that the statement exists;

> > **(ii)** the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and

> > **(iii)** the defendant's recorded testimony before a grand jury relating to the charged offense.

Fed. R. Crim. P. 16(a)(1)(A) and (B). We consider each of Dudenhoefer's discovery requests as they relate to the foregoing disclosure mandates.

### A. Agent Reports and Rough Notes

As noted, the Government has produced the law enforcement reports of Dudenhoefer's alleged statements given on February 23, 2021 and May 25, 2021. In addition, the Government has produced the existing rough notes, which relate to the February 23, 2021 interview. Thus, the Government represents that it has produced all available responsive information pertaining to agent reports and rough notes.

5

Dudenhoefer counters that the Government's disclosure is inadequate because it fails to answer important questions, such as, *e.g.*:

> Did only one of the two Federal agents at the interview take notes?

> If both agents took notes, why was only one agent's notes produced?

> Did both state BEI agents take notes?

> What happened to the state agents' notes – that is, why are they not available?

> If their notes were destroyed, why?

> Did the state agent undertake an interview at the behest of the prosecution team?

> Did the state agent undertake an interview at the behest of the investigative team?

> What instructions were the state agents given about retaining their notes?

ECF No. 741 at 4.

Regarding the February 23, 2021 interview, the Court assumes, based on the Government's disclosures, that only one federal agent took notes and, therefore, all available notes from that interview have been produced.  If the Court is mistaken -- that is, if *both* federal agents took notes of the February 23, 2021 interview, then both sets of notes should have been produced. To the extent any additional notes from that interview exist, the prosecution is directed to produce them to defense counsel forthwith.  Alternatively, to the extent any federal agent's notes from the February 23, 2021 interview were destroyed and no longer exist, the prosecution should disclose that fact to defense counsel forthwith.

Regarding the BEI agents who interviewed Dudenhoefer on May 25, 2021, the Government has already explained that the notes from that interview session were destroyed pursuant to BEI policy after the report of the interview was compiled.  Dudenhoefer's questions concerning the destruction of the state agents' notes touch upon whether the BEI is properly considered part of the "prosecution team" in this case.  In the context of *Brady* discovery, the

U.S. Court of Appeals for the Third Circuit has identified three relevant inquiries which inform the extent of the prosecution's constructive knowledge and cross-jurisdictional disclosure obligations, namely: "(1) whether the party with knowledge of the information is acting on the government's 'behalf' or is under its 'control'; (2) the extent to which state and federal governments are part of a 'team,' are participating in a 'joint investigation' or are sharing resources; and (3) whether the entity charged with constructive possession has 'ready access' to the evidence." *United States v. Risha*, 445 F.3d 298, 304 (3d Cir. 2006); *see also United States v. Coles*, 511 F. Supp. 3d 566, 583 (M.D. Pa. 2021).  Given the importance of the Defendant's right to full discovery under Rule 16(a)(1)(A) and (B), the longstanding directive in this circuit concerning the preservation of rough interview notes, *see United States v. Ramos*, 27 F.3d 65 (3d Cir. 1994), and the Government's stated intent to utilize some of Dudenhoefer's statements from the May 25, 2021 interview, it is fair to ask of the Government whether it considers the BEI to be part of the prosecution team in this case -- an inquiry which has ramifications not only with respect to the Government's Rule 16 obligations, but also with respect to its obligations to disclose *Brady/Giglio* material.  Accordingly, the Court will direct the Government to file a notice, within 10 days, stating whether it considers the BEI to be part of the prosecution team in this case and its reasons for so concluding.  The Government's notice should address whether the BEI agents undertook Dudenhoefer's interview at the behest of federal prosecutors and/or investigators[2] and, if so, what instructions, if any, were given to the state agents concerning the retention of their notes.

### B.  Law Enforcement Communications and Rough Drafts

---

[2] The Court acknowledges Dudenhoefer's representation that the BEI agents informed him they had received an unspecified "complaint" about him.  ECF No. 681 at 2.  Given the undeveloped state of the record, the Court cannot draw any meaningful conclusions about the BEI's status as it relates to the prosecution team in this case.

Dudenhoefer also requests the contents of any statements attributed to him as reflected in law enforcement "communications," and "rough drafts of reports, memoranda or other writings related to them[.]" ECF No. 741 at 7. The Government has represented that it is not presently aware of any electronic communications or rough drafts of reports, memoranda, or other writings which relate to Dudenhoefer. The Government further represents that, if the items requested are discovered during the pendency of the case and are discoverable under Rule 16 or as *Brady* material, they will be provided.

The Court accepts the Government's representations and, therefore, this aspect of Dudenhoefer's motion will be dismissed as moot.

### C. Briefings, Question Lists, or Scripts

Dudenhoefer has requested any "briefings or presentations (including, Microsoft® PowerPoint® or similar presentation tools), lists of questions, lists or outlines of subjects of inquiry, or scripts" that were provided to federal or state agents who interviewed him. ECF No. 741 at 7. As the Government observes, Rule 16 does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for or agent of the government, "[e]xcept as permitted by Rule 16(a)(1)(A)-(D) [relating to the Defendant's own statements or criminal record], (F) [relating to examinations and tests], and (G) [relating to expert witnesses]. . . ." Fed. R. Crim. P. 16(a)(2). The type of preparatory and background information requested by Dudenhoefer does not logically fall within these exceptions. Nor is the Government constitutionally required to make "a complete and detailed accounting to the defense of all police investigatory work on a case.'" *Lambert v. Blackwell*, 387 F.3d 210, 265 (3d Cir. 2004) (quoting *United States v. Agurs*, 427 U.S. 97, 109 (1976)).

8

Accordingly, the Court agrees with the Government that the items requested are not discoverable under Rule 16.

In his post-argument brief, Dudenhoefer cites *In re Grand Jury Investigation*, 599 F.2d 1224, 1228 (3d Cir. 1979), for the proposition that the attorney work product doctrine does not protect the materials he is seeking or, if it applies, it was waived and/or he has made a sufficient "good cause" showing to overcome the qualified protection afforded by the privilege.  The Court finds this line of argument unpersuasive.

First, the three-part inquiry utilized by the court in *In re Grand Jury Investigation,* and applied by Dudenhoefer, was not undertaken in the context of criminal pretrial discovery or Rule 16(a)(2) in particular. Therefore, it provides little guidance as to how Rule 16(a)(2)'s protection should apply here.

Second, the Court does not agree that the Government waived the protections afforded by Rule 16(a)(2) relative to Dudenhoefer.  Notably, the only item of background/preparatory material which the Government implicitly acknowledges possessing is a typed list of questions that the federal agents used in connection with Dudenhoefer's interview.  The Government denies that the questions list is discoverable but notes that a copy of the list was produced to Exley because the interviewing agent had written notes on the document while questioning her. Dudenhoefer seemingly interprets this disclosure by the Government as a complete waiver of its work product privilege.  But the Government has clearly asserted its rights under Rule 16(a)(2) in Dudenhoefer's case and, assuming any waiver occurred, it was only as to Defendant Exley, of necessity, because the document contained notations that were arguably discoverable material. The Court does not construe the Government's limited waiver in this regard to be a full-fledged waiver of its rights to assert the protections afforded by Rule 16(a)(2) in Dudenhoefer's case.

9

Dudenhoefer observes that the Government could have redacted the template or script portion of the document and produced only the handwritten notes themselves.  He surmises that "the only reason to have made this disclosure is that the United States Attorney recognized the notes did not reflect the substance of Ms. Exley's statement absent the related portions of the template or script."  ECF No. 746 at 7.  The Court declines to engage in speculation of this nature and finds no basis for questioning the Government's representation that the list of interview questions does not contain *Brady* information. Accordingly, the Government's position that the list does not constitute discoverable information in Dudenhoefer's case, either under *Brady* or under Rule 16, is well-taken.

### D. Grand Jury Testimony

Dudenhoefer has also requested "[a]ny grand jury testimony relating, referring to, or reflecting statements attributed to [him]."  ECF No. 741 at 7.  Dudenhoefer does not contend that he personally testified before the grand jury in this case; rather, he seeks the testimony of any other individuals -- especially government agents -- who attributed statements to him while testifying to the grand jury.

The Government contends that this request is expressly prohibited by Rule 16 and the Jencks Act.  The Court agrees.

By its own terms, Rule 16 does not "authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500," otherwise known as the Jencks Act. Fed. R. Crim. P. 16(a)(2).  The Jencks Act, in turn, precludes the discovery or inspection of any "statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) . . . until said witness has testified on direct examination in the trial of the case."  18 U.S.C. § 3500(a).  This Court lacks the authority to order early disclosure of Jencks material.

*See e.g., United States v. Murphy*, 569 F.2d 771, 774 (3d Cir. 1978) ("[T]he Jencks Act flatly

states that disclosure of prior statements by government witnesses may not be compelled 'until

said witness has testified on direct examination in the trial of the case.' The blunt command of

the statute together with the unequivocal legislative history has led to unbroken precedent in the

Courts of Appeals denying to district courts the power to compel production of the statements of

government witnesses until conclusion of direct examination at the trial."); *United States v.*

*Hoyle*, No. 2:21-CR-0377, 2023 WL 6795263, at *2 (W.D. Pa. Oct. 13, 2023) ("With respect to

Jencks disclosures, [t]here is no authority by which this court can order the government to

provide Jencks Act statements prior to the time the witness has testified on direct examination at

trial.") (citation omitted).

      Here, the Government has acknowledged its obligation to produce any grand jury

testimony, along with other Jencks material, for any individual whom it plans to call as a witness

at trial.  Although the Government has expressed a willingness to disclose Jencks materials two

weeks in advance of trial, it objects to making such disclosures now and accurately notes that it

cannot be compelled to do so.  Further, the Government contends that disclosure of the requested

grand jury testimony would violate longstanding public policy concerns. The Government's

position on this point is sound.

      "As a matter of public policy, grand jury proceedings generally must remain secret except

where there is a compelling necessity." *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir.

1989).  A court may, however, authorize disclosure of grand jury matters at the request of a

defendant if "a ground may exist to dismiss the indictment because of a matter that occurred

before the grand jury." *Id*. (quoting Fed. R. Crim. P. 6(e)(3)(E)(ii)).  Disclosure is also permitted

"when so directed by a court preliminary to or in connection with a judicial proceeding." Fed. R.

Crim. P. 6(e)(3)(E)(i).  But to succeed on a motion for judicially ordered disclosure of grand jury

matters, a defendant must show a particularized need for the information that outweighs the public interest in secrecy. *McDowell*, 888 F.2d at 289; *United States v. Jackson*, 363 F. App'x 159, 161 (3d Cir. 2010). Vague allegations, bald assertions of impropriety, or speculation about what the grand jury materials may reveal are insufficient to establish a particularized need for disclosure. *See Jackson*, 363 F. App'x 159 (3d Cir. 2010) (defendant's "wholly conclusory" explanation for why he needed grand jury materials did not demonstrate a particularized need); *United States v. Minerd*, 299 F. App'x at 110, 111 (3d Cir. 2008) (Vague allegations that government committed "fraud before the grand jury" and that "the government's attorney did everything he could to deliberately express his opinions on questions of facts in an attempt to influence the grand jury findings" did not demonstrate a particularized need for disclosure). In balancing a particularized need for grand jury materials against the need to limit disclosure, the district court "'necessarily is infused with substantial discretion.'" *McDowell*, 888 F.2d at 289 (quoting *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 223 (1979)).

Dudenhoefer's argument in favor of disclosure is two-fold. First, he notes that the Jencks Act's prohibition on pretrial disclosure of witness statements and reports only applies to witnesses "other than the defendant." 18 U.S.C. § 3500. In essence, he argues that any grand jury testimony referencing a statement attributed to him is essentially a form of his own oral statement under Rule 16(a)(1) and, therefore, compelled production of same does not violate the Jencks Act. Dudenhoefer cites no cases where courts have expressed agreement with this interpretation of Rule 16 and the Jencks Act. On the other hand, some courts have rejected arguments similar to that advanced by the defense. *See, e.g., United States v. Naggs*, Case No. 18-cr-130, 2020 WL 5105792, at *2 (E.D. Wis. August 31, 2020) (government was not required to produce grand jury testimony of law enforcement and/or summary witnesses who read or summarized the defendant's own testimony to the grand jury; the "form of presentation" did not

12

"somehow transform [the] witness' statement into [the defendant's] statement under Rule 16");
*United States v. Burnett*, Criminal No. 12-CR-2332, 2013 WL 12334143, at *11 (D. New Mex.
Mar. 8, 2013) (rejecting defendant's request for grand jury transcript that contained defendant's
oral statement where the substance of the oral statement had already been disclosed in an agency
report and court noted that "the government [was] not required to produce the statements to
defendant in every possible document in which the statements are contained").  On balance,
Dudenhoefer's reading of Rule 16 is unpersuasive.

Dudenhoefer next argues that he has a particularized need for grand jury testimony in this
case which outweighs the public policy interest in maintaining grand jury secrecy.  He points to
alleged inconsistencies between the agent reports and the available rough notes, as well as
inconsistencies between the agent reports of his statements and the prosecution's December 5,
2022 notice letter.  He submits that, if a law enforcement agent reported a different version of his
statements to the grand jury, "it would provide another data point with which to consider its
admissibility, as well as the weight to be accorded to it . . . ."  ECF No. 741 at 6.  He contends
there is no principled difference between the law enforcement notes and reports, which he
already possesses, and the testimony of an agent's recollection of his statements.  He argues that
any concerns about secrecy are lessened here because he already knows who interviewed him
and there can be no concerns that he will intimidate law enforcement officers.  Further, he states
that the unsealing of the indictment moots any need to conceal the fact or focus of the underlying
investigation.

Giving Defendants' argument due consideration, the Court is not persuaded that the
circumstances of this case weigh in favor of compelling the production of grand jury testimony.
Dudenhoefer is already in possession of the most contemporaneous memorializations of the
statements he allegedly gave to law enforcement agents, because he has their reports of the

13

interviews and well as the federal agents' rough notes.  He is also aware of the circumstances under which he was questioned by agents and therefore can move to suppress his statements if he believes doing so is warranted in this case.  His assertions that agent recollection is fallible and and that there are inconsistencies as between the agents' notes, their summative reports, and his own recollection of the interviews is not atypical for an accused individual who has provided statements to government agents.  On the contrary, it is normal fodder for cross examination and does not rise to the level of a compelling or particularized need for grand jury testimony that may have been offered by investigating agents in this case.  If such testimony exists, it should be produced consistent with the provisions of the Jencks Act, and Dudenhoefer will have the benefit of such information for use at trial.  To the extent the prosecution's December 5, 2022 letter is inconsistent with the agent reports and rough notes, it is of little moment because the Government presumably is not seeking to produce the letter itself as an exhibit, nor could it; rather, the letter was intended only as a form of notice that portions of Dudenhoefer's two statements would be utilized by the Government at trial.  Finally, this is not a situation where allegations of improprieties before the grand jury have been made.

In sum, Dudenhoefer may be entitled to review grand jury testimony after a witness "testified on direct examination at trial if their grand jury testimony was related to the subject matter of their trial testimony." *United States v. Jackson*, 363 F. App'x 159, 161 (3d Cir. 2010) (citing 18 U.S.C. § 3500(e); *United States v. Wong*, 78 F.3d 73, 83 (2d Cir. 1996); and *United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir. 1972)).  However, he is not entitled to compelled production of such material at this time.

## III.   CONCLUSION

Based upon the foregoing reasons, Dudenhoefer's Motion for Disclosure of Defendant's Statements will be dismissed as moot to the extent it seeks law enforcement reports of his

interviews, "rough drafts of reports, memoranda or other writings," law enforcement communications, or "other writings" containing his statements.  As it relates to agent rough interview notes, the motion will be granted insofar as the Government shall: (1) provide defense counsel forthwith any additional rough notes from Defendant's February 23, 2021 interview and/or advise counsel forthwith if any such rough notes were destroyed; (2) file a notice within 10 days stating whether it considers the BEI to be part of the prosecution team in this case, as described more fully herein.  In all other respects, Defendant's motion will be denied.

An appropriate order follows.


_____
Susan Paradise Baxter
United States District Judge

15