# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cr-39 |
| | ) | |
| AUSTIN JOHN DUDENHOEFER | ) | |

## MEMORANDUM OPINION RE: ECF NO. 896

Pending before this Court is a motion by Defendant Austin John Dudenhoefer ("Dudenhoefer") to preclude BEI agents from testifying at trial about statements that Dudenhoefer allegedly made during a May 25, 2021 interview. Dudenhoefer contends that suppression of the testimony is appropriate because BEI agent notes from the interview were not preserved. For the reasons that follow, the motion will be denied.[1]

### I.     BACKGROUND

During times relevant to this case, Professional Conduct Investigators (PCI) Richard Jones and Tod Reiser were employed by the Pennsylvania Department of State ("DOS"), Bureau of Enforcement Investigations ("BEI"). Dudenhoefer was interviewed by these agents on May 25, 2021. While speaking with Dudenhoefer on that date, Jones took notes of the interview. He subsequently compiled a report based on those notes. The report included a preamble narrative describing BEI's involvement with the case, followed by a discussion of the information that was allegedly provided by Dudenhoefer. After completing his report, Jones submitted it to the

---

[1] Certain other Defendants have joined in Dudenhoefer's motion requesting that the Court suppress testimony from BEI agents, based on the destruction of their rough interview notes. The Court's ruling herein applies as well to the requests made by the other joining Defendants.

DOS's prosecuting division in Harrisburg. In accordance with agency practice, Jones destroyed the notes of his interview after his report was finalized.

Pursuant to its obligations under Rule 16, the United States produced to Dudenhoefer the portion of the BEI Investigator's report that related to Dudenhoefer's statements. The Government disclosed that it was not producing raw notes related to the interview because they had been destroyed consistent with BEI practice.

The defense subsequently filed motions to compel additional disclosures from the prosecution. Among the topics that were raised was the destruction of BEI interview notes. In an Order dated November 9, 2023, the Court directed the prosecution to file a notice addressing "whether the BEI agents undertook Defendant Dudenhoefer's interview at the behest of federal prosecutors and/or investigators and, if so, what instructions, if any, were given to the state agents concerning the retention of their rough notes." ECF No. 833 at 1. AUSA Trabold filed a notice on November 18, 2023, detailing his reason why the Government did not consider the BEI to be part of the prosecution team. The notice stated, in relevant part, that "[n]either undersigned counsel for the United States nor any federal or state investigator involved in the investigation of this case has ever directed any BEI agent to take any action in this case." ECF No. 838.

In July 2024, the Government made additional disclosures involving statements of various witnesses that the Government deemed to be incriminating. These included BEI reports of various interviews, including the preamble narrative. On August 12, 2024, the Government provided Dudenhoefer the full BEI report of his interview with CPI Jones, which included the BEI narrative at the beginning of the report and not just the report of Dudenhoefer's interview.

Based on information obtained from the full BEI report, Dudenhoefer disputes the Government's position that BEI was not part of the prosecution team. Because under federal law, agents are required to retain their rough notes, *see United States v. Vella*, 562 F.2d 275 (3d Cir. 1975) and *United States v. Ammar*, 714 F.2d 238, 259 (3d Cir. 1983), and because the BEI investigator's notes were destroyed, Dudenhoefer argues that spoliation has occurred such that the BEI agents should be precluded from testifying at trial.

The motion has been fully briefed and, on November 8, 2024, the Court held an evidentiary hearing on this matter. During the hearing, the Court received testimony from CPI Jones. It also heard testimony from Lisa Fawcett, a civil investigator for the U.S. Attorney's Office, and Attorney Heather McCarthy, a senior prosecutor with the Commonwealth of Pennsylvania Office of General Counsel, who was assigned to the DOS. The Court received numerous exhibits into evidence, both during and after the hearing, as reflected more fully on the docket.

The Court has reviewed and fully considered all evidence pertaining to the motion. The Court has also considered all relevant factors involved in assessing the credibility of the witnesses, including "the witness's demeanor and manner while on the stand, the witness's ability to accurately recollect the matters at hand, the manner in which the witness may be affected by the outcome, the extent to which the witness's testimony is either supported or contradicted by other evidence and testimony in the case, and, ultimately, the extent to which it withstands a common sense test of reason and logic." *United States v. Murphy*, 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005). The witnesses who appeared at the hearing were knowledgeable about the matters on which they testified. They provided detailed information and had good recall and displayed no obvious bias or interest in the outcome of the proceeding. Their demeanor on the

stand was credible. Accordingly, the Court accepts and credits the testimony of the witnesses who appeared at the evidentiary hearing.

## II. ANALYSIS

### A. *The DOS/BEI Employees Were Not Part of the Prosecution Team*

In arguing that BEI agents were part of the prosecution team in this case, Dudenhoefer points to the Preamble of Jones' BEI report which outlines the agency's involvement in issues related to this case. Dudenhoefer subpoenaed documents evidencing email communications that the DOS and BEI employees (including Jones and McCarthy) had with various federal agents, including FBI Special Agent Michael Thoreson, HHS Agent Thomas Chisholm, OAG Agent Andrew Bovaird (who was deputized as a federal task force agent), investigator Fawcett, and AUSA Paul Skirtich. Defense counsel questioned each witnesses concerning these communications as they relate to the events outlined in the BEI report.

The sum and substance of the credible evidence is that there was a degree of contact and cooperation between agents acting on behalf of the Pennsylvania Department of State and/or BEI on one hand and agents acting on behalf of the United States on the other, but no joint prosecution. On February 25, 2021, just after the initial search warrants had been executed in the criminal investigation into HB's practices, Agent Andrew Bovaird of the Pennsylvania Office of Attorney General, contacted CPI Jones and arranged an introductory meeting between DOS/BEI agents and members of the federal prosecution team. A line of communication was opened between these two camps and, as a result, each side shared certain information with the other that was pertinent to their respective investigations. However, these two groups pursued parallel, not joint investigations. On the state side, the DOS prosecutors and BEI agents were pursuing an investigation relating to licensing issues. On the federal side, the agents initially were pursuing

allegations brought under the False Claims Act, but that matter was later referred to the criminal division of the U.S. Attorney's office and developed into a criminal investigation that resulted in the pending charges.

The record reflects that the BEI was generally informed of the federal criminal investigation into HB shortly after the initial search warrants were executed at the five HB locations on February 23, 2021, an event which was reported in the media. The BEI was not informed of the impending HB indictment prior to its return by the grand jury in November 2021, nor did it have input in the preparation of that indictment. Information was shared between the DOS/BEI and the federal prosecution team as a matter of professional courtesy, and there was some degree of coordination because BEI/DOS agents did not want to interfere with the ongoing criminal investigation.

However, at the time the BEI interviews occurred, neither CPI Jones nor CPI Reiser were members of a federal law enforcement task force charged with investigating this criminal case. In fact, Jones and Reiser were not even state law enforcement officers, in that they lacked arrest powers and did not carry firearms or handcuffs. The BEI agents' job was to investigate the conduct of individuals who were professionally licensed in Pennsylvania.

To that end, Jones and Reiser interviewed a number of licensees, but they were not directed by the FBI, the U.S. Attorney's Office, or any other criminal investigator or prosecutor in this case to interview Dudenhoefer or other HB employees. No joint interviews occurred between BEI agents and federal agents working on the HB criminal case. On the contrary, BEI agents took their investigatory direction from the DOS licensing prosecutors. Further, the record contains evidence of FBI Special Agent Thoreson specifically indicating to BEI/DOS personnel that BEI/DOS should undertake whatever action they deemed appropriate relative to their

agencies' interests. Although Thoreson provided names of licensees that the BEI agents might want to interview, he did not direct the BEI agents to conduct the interviews or provide a script or list of questions to use. Instead, decisions about whom the BEI agents would interview were ultimately made by the DOS supervisory chain of command. To the extent BEI or DOS sought input from federal agents relative to their own investigation, this was a matter of professional courtesy only. In sum, at no point in time did CPI Jones or any member of the DOS/BEI team act as members of the federal prosecution team in this case.

Because neither CPI Jones, nor any agent acting on behalf of the Pennsylvania DOS or BEI was a member of the federal prosecution team, there was no obligation on the part of the DOS/BEI agents to retain their interview notes relative to this criminal matter.

### B. Dudenhoefer Has Not Presented Colorable Evidence of a Brady Violation

Under the law of this circuit, government agents must preserve rough notes of interviews with prospective trial witnesses. *See United States v. Ramos*, 27 F.3d 65, 66 (3d Cir. 1994); *United States v. Vella*, 562 F.2d 275 (3d Cir.1977) (per curiam). Because the Court has determined that the DOS/BEI agents were acting only in their capacity as state agents investigating state licensure issues and were not acting as members of the federal prosecution team in this case, they were not obligated to preserve their notes under the rule of *Ramos* and *Vella*.

Beyond this fact, however, there has been no colorable claim that the lost notes contained *Brady* material. As the U.S. Court of Appeals observed in *Ramos*, "it is unwise to infer the existence of Brady material based upon speculation alone." 27 F.3d at 71. Accordingly,

> unless [a] defendant is able to raise at least a colorable claim that the investigator's discarded rough notes contained evidence favorable to [him] and material to his claim of innocence or to the applicable punishment—and that such exculpatory evidence has not been included in any formal interview report provided to

>defendant—no constitutional error of violation of due process will have been established.

*Id.* (quoting *United States v. Griffin*, 659 F.2d 932, 939 (9th Cir. 1981)).

In this case, CPI Jones testified that both he and CPI Tod Reiser interviewed Dudenhoefer. Both agents asked questions. Jones took notes during the interview. He subsequently generated his report of the interview based on those notes. As a matter of practice, everything that was in his notes was put into his report. Jones testified that this was how he always compiled his reports of interviews -- *i.e.*, whatever was in his notes was incorporated into the report, and nothing from the notes was omitted. Jones did not remember whether CPI Reiser took notes of the interview; he stated, however, that, if Reiser did take notes of the interview, then Jones would have obtained those notes and incorporated their content into his report. Jones stated clearly that he followed this process in every case. Thus, his practice of taking what was in his notes and including that content in his report is something he would have repeated for all of his interviews of HB employees. *See* ECF No. 1025 at 134, 146-48, 150-52, 158. As stated, the Court finds CPI Jones credible as a witness and accepts his testimony on this matter.

Thus, there has been no colorable claim that Jones' lost interview notes contained *Brady* information. On the contrary, any such assertion is belied by Jones' credible testimony and by the fact that his report incorporated certain information that was favorable to the defense.

Dudenhoefer nevertheless insists that he has made a colorable claim of a Brady violation. He argues that, without a contemporaneous recording of his interview, the best evidence of what occurred is Jones' notes, not a report that was compiled months after the fact. He posits that, with the benefit of the rough notes, he could explore any discrepancies that might exist between the notes and report, which would be relevant to the jury's assessment of Jones' credibility.

This argument fails to establish a colorable basis for inferring a *Brady* violation. First, as an aside, Jones testified that the date at the top of his report is merely the date that it was officially submitted, not the date it was authored. Putting that aside, Dudenhoefer's argument assumes, without evidence, that there would be material discrepancies between the notes and the report; as discussed, Jones' testimony refutes that assumption. And moreover, not every discrepancy is material enough to constitute Brady information. *See Rivera v. Pennsylvania,* 187 F. Appx. 240, 247 (3d Cir. 2006) (noting that the "mere possibility that an item of undisclosed information might have helped the defense . . . does not establish materiality in the constitutional sense"). Here, there is no evidence to support a finding that the destruction of Jones' notes constituted a *Brady* violation.

Additionally, the evidence in this case demonstrates that the destruction of CPI Jones' notes occurred in good faith. *See Ramos*, 27 F.3d at 69 (court concluding that it should apply a "good faith" test to destruction of evidence); *United States v. Fleet Mgmt. Ltd.*, No. CRIM.A. 07-279, 2008 WL 1989958, at *6 (E.D. Pa. May 7, 2008) (court acknowledging the "clear message in *Ramos* that the Third Circuit frowns upon the destruction of notes by law enforcement officers," but further noting that "*Ramos* did not establish a per se rule, and only demands suppression of statements based upon the destruction of notes when the law enforcement officer has acted in bad faith").

Jones testified that, as a CPI, he would investigate parties suspected of licensing violations, interview them, compile a report, and then submit the report to the prosecuting division of the Department of State in Harrisburg. Although investigators would take notes during interviews, it was agency practice to destroy the notes once the BEI case was finalized. Consistent with this BEI practice, Jones took notes of his interview of Dudenhoefer and

subsequently destroyed them after his report was finalized, approved by his supervisor, and submitted to the DOS. No federal agency or actor, and no state criminal agency, ever instructed Jones either to keep or to destroy his notes.  And had a federal agent or federal attorney instructed Jones to keep his interview notes, Jones would have needed to obtain approval to do so from his own chain of command.  ECF No. 1025 at 66-67, 81-82, 128-29.  Further, as discussed, the evidence indicates that the BEI/DOS investigators and lawyers were not part of the federal prosecution team in this case.

In sum, the credible evidence shows that there was no bad faith involved with the destruction of Jones' interview notes.  The Court cannot conclude that any BEI or DOS official, or any member of the Government's prosecution team in this matter took action to preclude the dissemination of exculpatory information or to obstruct justice in some other way.  The Court has found CPI Jones credible in his explanation as to why he destroyed his notes. The Court further credits Jones' testimony that the full content of his notes was incorporated in his reports. Based upon all the foregoing considerations, the Court concludes that suppression of the BEI agents' testimony is not warranted under *Ramos* and related Third Circuit law.

   C. *Suppression of Evidence Related to the Defendants' May 25, 2021 Statements Is Not Warranted Based on Allegations of Spoliation*

Dudenhoefer argues that the BEI agents should be precluded from testifying based on ordinary principles of spoliation.  This line of argument is unpersuasive.

As Dudenhoefer observes, "[s]poliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *See* ECF No. 896 at 8 (quoting *United States v. Bunty*, 617 F. Supp. 2d 359, 370 (E.D. Pa. 2008)). When determining the appropriate sanction for spoliation, courts consider:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Id*. at 8-9 (quoting *Bunty*, *supra*). Here, even if Dudenhoefer could make a showing of spoliation, the suppression of the BEI agents' testimony would not be warranted.

First, the degree of fault weighs against suppression. There is no evidence that any party intended to impair the ability of the defense to effectively litigate its case. As discussed, BEI interview notes were destroyed in compliance with longstanding BEI practice. Further, the Court is unable to conclude that any of the federal actors conducted themselves in bad faith when they failed to instruct Jones (or the other BEI agents) to preserve interview notes. Indeed, they ostensibly had no authority to do so, as the BEI agents were not members of the federal prosecution team.

The Court's consideration of potential prejudice also weighs against suppression. Any assertion that materially exculpatory information was lost because of the destroyed notes is purely speculative. And to the extent defense counsel would have used the notes to try and cast doubt on the veracity of the BEI report and/or CPI Jones's credibility, the Court cannot infer substantial prejudice, given CPI Jones' credible testimony that the substance of his notes was fully incorporated into the body of his report.

Finally, consideration of whether there is a lesser, more appropriate sanction weighs against granting the Defendant's motion. Here, the loss of the BEI interview notes is fodder for cross-examination, and defense counsel may attempt to impeach the credibility of the testifying witnesses through that line of questioning. However, the severe sanction of suppression is not warranted, particularly where no party exhibited bad faith, the Court cannot infer substantial prejudice, and there is no strong need for deterrence.

### III. CONCLUSION

For all of the foregoing reasons, Dudenhoefer's motion to preclude the testimony of BEI Agent testimony on spoliation grounds will be denied.

An appropriate order follows.

SUSAN PARADISE BAXTER
United States District Judge